### CONTINUATION OF SEARCH WARRANT

I, Johnathan Trent, being duly sworn, do hereby state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.I make this continuation in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search a white 2007 Chevrolet Impala (the "SUBJECT VEHICLE"), described more fully in Attachment A, for evidence of violations of 18 U.S.C. §§ 1112, 1151, 1153, and Hannahville Legal Code § 1.2313a (involuntary manslaughter, hereinafter, the "TARGET OFFENSE"). The items sought are more specifically described in Attachment B.

2.I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI) and have been so employed since 2023. As a federal agent, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States. My duties include the investigations of matters involving the TARGET OFFENSE.

3.I am conducting an investigation related to a violation of the TARGET OFFENSE by Veronica Williams (the "SUBJECT PERSON"). As set forth in this continuation, based on my training and experience and the evidence discovered during the course of my investigation, there is probable cause to believe that a violation of the TARGET OFFENSE has been committed by the SUBJECT PERSON with the SUBJECT VEHICLE. There is also probable cause to believe that evidence related to the TARGET OFFENSE is presently located within or on the exterior of the SUBJECT VEHICLE.

4.The statements in this affidavit are based on my investigation of this matter, as well as the receipt of information from other FBI personnel and state, local, and tribal law enforcement officers. Since this affidavit is being submitted for the limited purpose of securing a search warrant,

1

I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence related to the TARGET OFFENSE is presently located within or on the exterior of the SUBJECT VEHICLE.

**PROBABLE CAUSE**

5. On January 23, 2024, at approximately 9:24 PM EST, Hannahville Indian Community Tribal Police responded to the area of W315 38th Road in Wilson, Michigan for an accident involving a motor vehicle and pedestrian. The location of the accident is on land held in trust by the United States for the benefit of the Hannahville Indian Community. Additionally, this location is in Menominee County, in the Northern Division of the Western District of Michigan.

6. The preliminary investigation has shown that the pedestrian-victim was walking in the roadway when struck by the SUBJECT VEHICLE. Police observed damage to the SUBJECT VEHICLE's windshield, fender, front driver's side headlight, and side view mirror.

7. The victim was transported to an area hospital where they were pronounced deceased at 11:03 PM. According to tribal police records, the victim was an enrolled member of the Hannahville Indian Community.

8. Hannahville Tribal Police identified the driver of the SUBJECT VEHICLE as the SUBJECT PERSON. According to tribal police records, the SUBJECT PERSON is an enrolled member of the Hannahville Indian Community.

9. When police arrived on scene, two other individuals were present (in addition to the victim and SUBJECT PERSON). One of those individuals (WITNESS ONE) told police that s/he arrived after the accident and asked the SUBJECT PERSON what happened. WITNESS ONE reported that the SUBJECT PERSON responded that she thought a deer was in the road and she

2

hit the victim. WITNESS ONE also reported that the SUBJECT PERSON said she had been drinking.

10. Police made contact with the SUBJECT PERSON at the scene of the accident and detected signs of intoxication including slurred speech, red, bloodshot eyes, and an odor of intoxicants.

11. Police also observed two open 24-ounce cans of Twisted Tea located in the cup holders of the SUBJECT VEHICLE. Police checked both cans and determined one can was almost empty and one can was almost full. Police arrested the SUBJECT PERSON.

12. At approximately 10:11 PM, police read the SUBJECT PERSON their *Miranda* Rights. The SUBJECT PERSON waived her rights and informed police that she had been drinking. She estimated that she had four (4) or five (5) big cans of Twisted Tea.

13. Police transported the SUBJECT PERSON to the Hannahville Tribal Police Department. There, police administered Standardized Field Sobriety Tests to the SUBJECT PERSON. Police observed clues indicative of impairment, including balance issues while walking and standing on one leg.

14. At approximately 11:00 PM, police conducted preliminary breath tests of the SUBJECT PERSON which registered a blood alcohol content of 0.151 and 0.139.

15. Police provided the SUBJECT PERSON with their chemical test rights in accordance with Michigan state law. The SUBJECT PERSON was transported to a local hospital where two blood samples were collected from the SUBJECT PERSON at approximately 11:47 PM. One of the two samples was tested by Michigan State Police and was determined to contain 0.157 grams alcohol per 100 milliliters of blood.

16. Officers queried the SUBJECT PERSON's driver's license and determined that she

had multiple prior citations for open intoxicants in a vehicle and a 2022 conviction for operating while impaired.

17. On January 25, 2024, police visited Massie's Country Market, located at 1302 Old Hwy 2 & 41, Bark River, MI 49807. Police reviewed surveillance video and store receipts, which showed the SUBJECT PERSON purchased three (3) 24-ounce Twisted Teas and one (1) 375-ml bottle of Southern Comfort at 7:29 AM on January 23, 2024, the date of the accident.

18. The SUBJECT VEHICLE was impounded and was secured at Poupore Collision and Towing, at 58 G-18 Rd W, Carney, MI 49812, which is located in Menominee County.

19. According to a search of the Michigan Secretary of State database, the SUBJECT VEHICLE is registered to the SUBJECT PERSON.

## APPLICABLE LAW

20. Based on my conversations with Assistant United States Attorneys, I know the following about the law applicable to the TARGET OFFENSE:

   a. Because both the victim and SUBJECT PERSON are both Indians and the events occurred in Indian country, as that term is defined in 18 U.S.C. § 1151, the Major Crimes Act, 18 U.S.C. § 1153, applies.

   b. One of the crimes enumerated in the Major Crimes Act is manslaughter. Manslaughter is defined under federal law as the "unlawful killing of a human being without malice." 18 U.S.C. § 1112(a). Involuntary manslaughter includes killings that occur in the "commission of an unlawful act not amounting to a felony." *Id.*

   c. The SUBJECT PERSON has been charged with § 1.2313a of the Hannahville Legal Code. That provision makes it unlawful for

   > any person whether licensed or not, who is under the influence of intoxicating liquor or who is under the influence of any drug or

> substance, whether legal, illegal, controlled or restricted, to a degree which renders him incapable of safely driving a motor vehicle of any kind, to operate, or be in actual physical control of such vehicle upon a road, highway, or in places generally accessible to motor vehicles of that kind.

H.L.C. § 1.2313a(1). A blood alcohol content of .10% or greater creates a rebuttable presumption that a person "was intoxicated and was incapable of safely driving." *Id.* § 1.2313a(3). A first violation of § 1.2313a is punishable by imprisonment of not more than 90 days; subsequent violations are punishable by up to, but not more than, one year of imprisonment. *Id.* § 1.2313a(1).

d. The Hannahville Indian Community Tribal Court has jurisdiction over offenses committed by Indians on land held in trust by the United States for the benefit of the Hannahville Indian Community. H.L.C. §§ 1.501.1, 1.502. Section 1.2313a therefore applied to the SUBJECT PERSON at the time of the accident.

**BACKGROUND ON POST-CRASH VEHICLE INSPECTIONS**

21. Based on my training and experience and the training and experience of certified accident reconstructionists, I know that post-crash vehicle inspections are typically conducted as part of the investigation into the cause(s) of an accident.

22. Post-crash vehicle inspections involve the examination of key vehicle components, including but not limited to the vehicle's tires, brakes, accelerator, lights, and safety features such as airbags and seatbelts, to determine their current condition and whether they were functional at the time of the crash.

23. In an investigation of the TARGET OFFENSE, where a critical issue is whether the accident was caused by the driver's unlawful actions, a post-crash inspection can help investigators rule out or identify other potential causes, such as mechanical failure. Such

5

information may corroborate the preliminary investigation and may assist with potential prosecution.

24. This warrant would authorize accident reconstructionists to conduct a post-crash inspection of the SUBJECT VEHICLE. The inspection may be conducted on scene or in a formal setting such as a Michigan State Police Post where special software, equipment, and personnel can be used as needed to conduct the inspection.

## CONCLUSION

25. Based upon the information above, I submit that there is probable cause to search the SUBJECT VEHICLE for evidence of violations of the TARGET OFFENSE by the SUBJET PERSON. I request that the Court issue a warrant authorizing a search of the SUBJECT VEHICLE, described in Attachment A, for the items described in Attachment B.